UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| LORIE HUSTON, | ) |
| | ) |
| *Plaintiff* | ) |
| | ) |
| v. | )   No. 2:12-cv-282-JAW |
| | ) |
| CAROLYN W. COLVIN, | ) |
| *Acting Commissioner of Social Security,*[1] | ) |
| | ) |
| *Defendant* | ) |

## *REPORT AND RECOMMENDED DECISION*[2]

This Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal raises the question of whether the administrative law judge supportably found the plaintiff capable of performing past relevant work as a shoe sole inspector. The plaintiff seeks reversal and remand on the bases that the administrative law judge (i) did not account, in his residual functional capacity ("RFC") finding, for the limiting effects of her fibromyalgia, plantar fasciitis, or sleep apnea, (ii) made insufficient inquiry into the nature of her shoe sole inspector job, (iii) contravened the so-called "mandate rule" by failing to follow the dictates of this court's prior ruling reversing an earlier decision and remanding the case for further proceedings, (iv) wrongly rejected the treating source opinion of psychiatrist Thomas Lantos, M.D., and his physician's assistant Essie Leach, PA-C, and (v) made an unsupportable adverse finding as to the

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Carolyn W. Colvin is substituted as the defendant in this matter.
[2] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on June 14, 2013, pursuant to Local Rule 16.3(a)(2)(C), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

1

credibility of her claims. *See* Plaintiff's Itemized Statement of Errors ("Statement of Errors") (ECF No. 16) at 4-19. I conclude, and recommend that the court find, that reversal and remand are warranted on the basis of the first point of error.

This case returns to this court following a February 28, 2011, reversal and remand of an April 20, 2010, adverse decision. *See* Record at 11-21, 541-42. The court ordered that, on remand, the administrative law judge be directed to update the plaintiff's medical records in light of the ongoing nature of her Title XVI claim and hold a new hearing to obtain further vocational expert testimony. *See id*. at 541. He was then to issue a new decision based on the total record. *See id*. at 541-42. The administrative law judge obtained updated evidence and presided at a hearing on October 17, 2011, at which the plaintiff and a vocational expert testified. *See id*. at 849-50.

On January 9, 2012, the administrative law judge issued the decision at issue, finding, in relevant part, pursuant to the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), that the plaintiff met the insured status requirements of the Social Security Act through December 31, 2010, Finding 1, Record at 525; that she had severe impairments of obesity, anxiety, depression, fibromyalgia, velocardiofacial syndrome, and a cognitive disorder with a low average verbal IQ score of 82, performance IQ score of 87, and full-scale IQ score of 84, Finding 3, *id*. at 526; that she retained the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) and was able to lift and carry 10 pounds frequently and 20 pounds occasionally, sit with normal breaks for an unlimited amount of time, stand or walk with normal breaks for six hours in an eight-hour workday, and occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs, was unable to climb ladders, ropes, or scaffolds, and

was limited to simple, routine, repetitive tasks and instructions and low-stress work, defined as involving only occasional changes in the work setting, required repetitive, routine, hands-on tasks, and was capable of occasional, brief interaction with the public, Finding 5, *id.* at 528; that she was capable of performing past relevant work as a shoe sole inspector, which did not require the performance of work-related activities precluded by her RFC, Finding 6, *id.* at 534; and that she, therefore, was not disabled from December 1, 2006, her alleged onset date of disability, through the date of the decision, January 9, 2012, Finding 7, *id.* at 534.  The Appeals Council declined to assume jurisdiction of the case after remand, *id.* at 517-19, making the decision the final determination of the commissioner, 20 C.F.R. §§ 404.984(a)-(b), 416.1484(a)-(b); *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence.  42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996).  In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn.  *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 4 of the sequential evaluation process, at which stage the claimant bears the burden of proving inability to return to past relevant work.  20 C.F.R. §§ 404.1520(f), 416.920(f); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).  At this step, the commissioner must make findings of the plaintiff's RFC and the physical and mental demands of past work and determine whether the plaintiff's RFC would permit performance of that work.  20 C.F.R. §§ 404.1520(f), 416.920(f); Social Security Ruling 82-62, reprinted in *West's Social Security Reporting Service* Rulings 1975-1982 ("SSR 82-62"), at 813.

The plaintiff's statement of errors also implicates Step 2 of the sequential evaluation process. Although a claimant bears the burden of proof at Step 2, it is a *de minimis* burden, designed to do no more than screen out groundless claims. *McDonald v. Secretary of Health & Human Servs.*, 795 F.2d 1118, 1124 (1st Cir. 1986). When a claimant produces evidence of an impairment, the commissioner may make a determination of non-disability at Step 2 only when the medical evidence "establishes only a slight abnormality or [a] combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." *Id.* (quoting Social Security Ruling 85-28).

## I. Discussion

### A. RFC Finding

In assessing the plaintiff's physical RFC, the administrative law judge gave great weight to a June 25, 2008, report of Disability Determination Services ("DDS") examining consultant Robert N. Phelps Jr., M.D., and a March 9, 2009, RFC opinion of DDS nonexamining consultant Iver C. Nielson, M.D. *See* Record at 344-47, 416-23, 532-33. However, as the plaintiff points out, she was diagnosed with three new impairments subsequent to those reports: fibromyalgia, sleep apnea, and plantar fasciitis. *See* Statement of Errors at 5-6, 9; *see also* Record at 516 (diagnosis by Usha Nalamalapu, M.D., on Jan. 5, 2010, of moderately severe obstructive sleep apnea), 649 (diagnosis by Michael A. Landrum, D.O., on Aug. 19, 2010, of "FMS," or fibromyalgia syndrome), 771 (diagnosis by Richard Steinmetz, D.P.M., on Aug. 5, 2010, of plantar fasciitis), 778 (diagnosis by rheumatologist Edward Fels, M.D., on May 4, 2011, of fibromyalgia).

The plaintiff argues, and I agree, that the fibromyalgia evidence alone constituted material new evidence that undermined the administrative law judge's reliance on the Phelps and Nielson reports. *See* Statement of Errors at 5-7. As a result, the administrative law judge's determination of the plaintiff's physical RFC is unsupported by substantial evidence. *See, e.g., Maddocks v. Astrue,* No. 1:11–cv–461–NT, 2012 WL 5255197, at *6 (D. Me. Sept. 30, 2012) (rec. dec., *aff'd* Oct. 23, 2012) ("[A] a state-agency reviewer's report cannot stand alone as substantial evidence in support of an administrative law judge's opinion when material new evidence has been submitted subsequent to its issuance, calling the expert's conclusions into question[.]") (citation and internal punctuation omitted).[3]

The administrative law judge found that the plaintiff had a severe impairment of fibromyalgia, with which she was diagnosed in 2010 "due to complaints of fatigue, frequent headaches, non-restorative sleep, subjective swelling, and widespread pain affecting the neck, shoulders, hands, low back, hips, legs, and feet[,]" *id*. at 530; *see also* Finding 3, *id*. at 526. Nonetheless, he found that these problems were "not extensive according to the medical evidence of record" and stated that, in any event, he had taken the plaintiff's fibromyalgia pain and fatigue into account in formulating her RFC. *Id.* at 530.

The administrative law judge did not explain how he accounted in his RFC for the plaintiff's fibromyalgia symptoms. *See id*. at 530-34. At oral argument, counsel for the commissioner suggested that he did so by adopting (i) the findings of Dr. Phelps, who made allowance for what counsel described as fibromyalgia symptoms, even though the disease was

---

[3] Post-remand, DDS nonexamining consultant Donald Trumbull, M.D., completed an RFC opinion dated November 16, 2010, in which, based on review of the then-available medical evidence, he assessed the plaintiff's physical impairments, including her fibromyalgia, sleep apnea, and plantar fasciitis, as nonsevere. *See* Record at 704-12. However, the administrative law judge stated that he gave the Trumbull opinion "less weight" because, "due to new and material evidence," it was "no longer consistent with the record as a whole." *Id*. at 533. While this suggests that he gave the opinion *some* weight, he did not explain how. *See id*. Thus, the opinion cannot stand as substantial evidence in support of the administrative law judge's RFC finding. At oral argument, counsel for the commissioner did not argue otherwise.

5

then as yet undiagnosed, and (ii) the RFC opinion of Dr. Nielson, who accepted the Phelps report. *Compare* Finding 5, *id*. at 528 *with id*. at 347, 417-23.

Dr. Phelps did make allowance, at the time of his examination on June 25, 2008, for the plaintiff's complaints of chronic neck and arm pain, in addition to her obesity. *See id*. at 347. However, counsel for the commissioner, as a layperson, is not qualified to equate the symptoms that the plaintiff reported to Dr. Phelps with those that led almost three years later to Dr. Fels' diagnosis of fibromyalgia. In any event, from all that appears, the plaintiff's condition changed from 2008 to 2011. She complained of more diffuse pain than was reported to Dr. Phelps, leading to the diagnosis of fibromyalgia. *See, e.g., id*. at 777-78; *see also, e.g*., Stedman's Medical Dictionary 671 (27th ed. 2000) (defining fibromyalgia as "[a] syndrome of chronic pain of musculoskeletal origin but uncertain cause"; noting, "The American College of Rheumatology has established diagnostic criteria that include pain on both sides of the body, both above and below the waist, as well as in an axial distribution (cervical, thoracic, or lumbar spine or anterior chest); additionally there must be point tenderness in at least 11 of 18 specified sites.").

Significantly, Dr. Fels, indicated on August 17, 2011, that the plaintiff had multiple tender points, nonrestorative sleep, chronic fatigue, and subjective swelling, as well as bilateral pain in her lumbosacral spine, cervical spine, thoracic spine, chest, shoulders, arms, hips, legs, and knees/ankles/feet. *See id*. at 780-81. As the plaintiff observes, *see* Statement of Errors at 11, Dr. Fels also stated that, in his experience, "a majority of patients with fibromyalgia will have limitations and difficulties with a multitude of tasks including prolonged standing, prolonged sitting, repetitive activities, and lifting objects[,]" Record at 846. Insofar as appears, the administrative law judge, thus, assessed *no* additional restrictions from fibromyalgia despite deeming the condition severe.

This in itself is error, most likely attributable, as the plaintiff suggests, *see* Statement of Errors at 9-11, to the administrative law judge's misunderstanding of the condition. He deemed her fibromyalgia "not extensive according to the medical evidence of record[,]" noting that (i) she remained neurologically intact, without significant limitation of motion, muscle spasms, atrophy, scoliosis, decreased strength, gait abnormalities, or motor, sensory, or reflex loss, (ii) had essentially normal radiographic studies, (iii) had not required surgical intervention, (iv) required only conservative care (*e.g*., osteopathic manipulation, chiropractic treatment, trigger point injections, and pain medication), and (v) did not require assistive devices to ambulate. *Id*. at 530-31. But all of this is consistent with a diagnosis of fibromyalgia. *See, e.g., Johnson v. Astrue*, 597 F.3d 409, 412 (1st Cir. 2009) (administrative law judge wrongly discounted treating physician's RFC opinion on bases, *inter alia*, that (i) physician had prescribed only physical therapy and aerobic exercise for fibromyalgia, when that was the appropriate treatment for the condition and (ii) physician's limitations were based on the claimant's subjective complaints, when "trigger points *are* the only 'objective' signs of fibromyalgia") (emphasis in original).[4]

The administrative law judge further noted that the plaintiff had obtained some degree of relief from trigger point injections, *see* Record at 531, but "local injections in fibromyalgia patients often provide relief that is only temporary[,]" *Johnson*, 597 F.3d at 411, as was the case here, *see, e.g.*, Record at 818 (April 14, 2011, progress note of Muhammad A. Khan, M.D.,

---

[4] At oral argument, counsel for the commissioner conceded that some of the evidence on which the administrative law judge relied, such as x-ray examination evidence, was not appropriately considered per *Johnson*. However, he contended that the error was harmless because the administrative law judge properly considered other findings that relate to the plaintiff's ability to function, for example, lack of use of an assistive device, normal strength, and good mobility. Yet, even these findings do not supply "medical evidence" that the plaintiff's fibromyalgia was not extensive: they are consistent with a diagnosis of fibromyalgia.

stating that injection given six months earlier had provided "excellent results for over 3 months").[5]

The administrative law judge's error in deeming the plaintiff's fibromyalgia impairment severe and yet failing to account for any limitations flowing therefrom warrants reversal and remand. At oral argument, counsel for the commissioner contended otherwise, emphasizing that, (i) while Dr. Fels stated that fibromyalgia patients generally have certain restrictions, he declined to provide an RFC assessment of the plaintiff, and (ii) there is no expert RFC opinion of record establishing that the plaintiff's fibromyalgia imposed restrictions greater than those found by Drs. Phelps and Nielson.[6] He reasoned that, because at Step 4 the burden of proof remained on the plaintiff, her failure to demonstrate precise fibromyalgia-related restrictions is dispositive in the commissioner's favor.

Nonetheless, the question presented is whether the administrative law judge's determination is supported by substantial evidence. In this case, it is not. Although an administrative law judge is not precluded from "rendering common-sense judgments about functional capacity based on medical findings," he "is not qualified to assess residual functional capacity based on a bare medical record." *Gordils v. Secretary of Health & Human Servs.,* 921 F.2d 327, 329 (1st Cir. 1990). Counsel for the commissioner did not argue that the administrative law judge could make a common-sense judgment about the impact of the plaintiff's fibromyalgia on her RFC. Rather, he contended that the administrative law judge properly relied on the opinions of Drs. Phelps and Nielson. Yet, as discussed above, Drs. Phelps

---

[5] The administrative law judge also made a partially adverse credibility finding, *see* Record at 531-32, but to the extent that he relied on that finding as direct support for his RFC determination, his reliance was misplaced, *see, e.g., Kresge v. Astrue,* Civil No. 09–248–B–W, 2010 WL 2024968, at *7 (D. Me. May 18, 2010) (rec. dec., *aff'd* June 22, 2010) (an RFC determination must be based on medical evidence, not credibility findings).

[6] Counsel for the commissioner correctly noted that, while treating chiropractor Paul M. Basko, D.C., assessed greater restrictions than found by Drs. Phelps or Nielson, citing low-back and right-leg pain, his September 25, 2009, opinion predated the plaintiff's fibromyalgia diagnosis and did not purport to account for fibromyalgia-related limitations. *See* Record at 600-03.

and Nielson did not take into account the full panoply of symptoms that ultimately led to the plaintiff's diagnosis of fibromyalgia. An expert RFC opinion that is rendered obsolete by later material developments cannot confer substantial evidence in support of an administrative law judge's RFC finding. *See, e.g., Maddocks,* 2012 WL 5255197, at *6. Nothing in the administrative law judge's handling of the condition otherwise cured that defect.

While the plaintiff also was diagnosed subsequent to the Phelps and Nielson reports with sleep apnea and plantar fasciitis, post-remand evidence relating to those conditions does not independently warrant reversal and remand because the administrative law judge made a supportable common-sense judgment that they were nonsevere.

With respect to sleep apnea, for example, he noted that "[m]edical records dated June 2, 2010, state that the [plaintiff] was sleeping better on CPAP and Ambien, and it was reported on February 14, 2010, that despite some difficulty getting use[d] to the CPAP, overall she felt more rested in the morning." Record at 526 (citations omitted). The plaintiff reported on July 22, 2010, that, although she had daytime sleepiness, she had "refreshing sleep" with the CPAP and Ambien. *Id*. at 789 (internal quotation marks omitted).[7]

In similar vein, the administrative law judge deemed the plaintiff's plantar fasciitis nonsevere because medical records indicated that, after treatment with icing, stretching exercises, corticosteroid injections, and orthotic shoe inserts, the plaintiff was "doing much better as of November 16, 2010," "was doing reasonably well as of March 31, 2011[,]" and "her foot condition was reported to be stable and only mildly symptomatic as of May 10, 2011." *Id*. at 526 (citations omitted). Although the plaintiff reported to her podiatrist, Dr. Steinmetz, on May 10,

---

[7] Although the administrative judge supportably concluded that the plaintiff's sleep apnea responded well to treatment, there is evidence that she continued to suffer chronic fatigue related to her fibromyalgia. *See, e.g.,* Record at 778, 780. As noted above, the administrative law judge purported to take into account fibromyalgia symptoms including chronic fatigue, but he did not explain how he did so, and it is not otherwise clear.

9

2011, that her feet hurt enough that she had to stop walking after half an hour, he found only mild pain on palpation and assessed her condition as stable, though chronic. *See id.* at 766.

### B. Other Points of Error

I briefly consider the plaintiff's remaining points of error, none of which independently warrants reversal and remand.

### 1. Job of Shoe Sole Inspector

The plaintiff argues that the administrative law judge found her capable of performing a job, shank inspector, Dictionary of Occupational Titles (U.S. Dep't of Labor, 4th ed. rev. 1991) ("DOT") § 788.687-110, that did not sufficiently correlate with her past relevant work. *See* Statement of Errors at 12-14. She points out that she inspected soles, not shanks, and that the vocational expert testified that she could not find a sole inspector job in the DOT. *See id.* at 13-14; *see also* Record at 896. She contends that the job of inspector, boot and shoe, DOT § 788.384-010, a medium-exertional-level job, is a closer fit. *See* Statement of Errors at 13; DOT § 788.384-010. Alternatively, she argues that her job was a "composite" job, given that she was required to perform more than occasional stooping and to carry boxes weighing 50 pounds. *See* Statement of Errors at 13.

As counsel for the commissioner noted at oral argument, a vocational expert possesses expertise in the matching of claimants' job descriptions with jobs listed in the DOT. The vocational expert indicated that the closest match was the job of shank inspector, and this court would be hard-pressed to substitute the judgment of the plaintiff or her counsel for that of the vocational expert on this point.

In any event, the plaintiff identifies no material difference between shoe soles and shoe shanks. She described her job as "inspect[ing] shoe soles, discard[ing] any rejects, [and]

10

assembl[ing] boxes w[h]ere materials would be stocked." Record at 175. In like vein, a shank inspector "[e]xamines steel arch shanks for imperfections, such as burrs or excess metal," "packs them in [a] container[,]" and "[d]iscards defective shanks." DOT § 788.687-110. The only significant difference between the two jobs is that the job as actually performed by the plaintiff entailed one additional duty, lifting and carrying full boxes of material, and two additional functional demands, lifting/carrying 50 pounds or more and stooping for four hours. *Compare* Record at 175 *with* DOT § 788.687-110.

Nonetheless, the fact that the plaintiff's job as actually performed entailed a duty and functional demands in excess of those described for the shank inspector job does not eliminate the latter job from the category of "past relevant work" for purposes of Step 4 analysis. *See, e.g., Parkes v. Astrue*, No. 1:11-cv-99-NT, 2012 WL 113307, at *5 (D. Me. Jan. 11, 2012) (rec. dec., *aff'd* Feb. 27, 2012) ("A former job performed by the claimant may have involved functional demands and job duties significantly in excess of those generally required for the job by other employers throughout the national economy. Under this test, if the claimant cannot perform the excessive functional demands and/or job duties actually required in the former job but can perform the functional demands and job duties as generally required by employers throughout the economy, the claimant should be found to be 'not disabled.'") (quoting Social Security Ruling 82-61, reprinted in *West's Social Security Reporting Service* Rulings 1975-1982 ("SSR 82-61"), at 838) (internal punctuation omitted).

Nor does the plaintiff succeed in demonstrating that hers was a "composite job," that is, a job that has "significant elements of two or more occupations and, as such, ha[s] no counterpart in the DOT." SSR 82-61 at 838. Such jobs must be "evaluated according to the particular facts of each individual case." *Id*. However, the only other job that the plaintiff identifies is that of

11

inspector, boot and shoe, DOT § 788.384-010. *See* Statement of Errors at 13. That job entails only one additional function, repairing shoes and shoe parts, which she did not perform. *Compare* Record at 175 *with* DOT § 788.384-010.

### 2. Mandate Rule

The plaintiff contends that the administrative law judge transgressed the so-called "mandate rule" when, on remand, he reopened the question of whether she was able to perform past relevant work, which he had decided in her favor in his 2010 decision. *See* Statement of Errors at 14-16.

> Under the 'mandate rule,' administrative agencies generally are obligated to follow the mandates set forth in a federal court decision. The administrative law judge may not do anything expressly or impliedly in contradiction to the district court's remand order, although he or she may act in ways that go beyond, but are not inconsistent with, the district court's opinion.

*Steele v. Astrue*, No. 2:09-cv-548-DBH, 2011 WL 4635136, at *1 (D. Me. Oct. 5, 2011) (rec. dec., *aff'd* Oct. 25, 2011) (citations and internal punctuation omitted). In directing the reversal and remand of this case for further proceedings, the court ordered that the administrative law judge update the plaintiff's medical records and hold a new administrative hearing to obtain further vocational expert testimony. *See* Record at 541. It further ordered that the administrative law judge present a hypothetical question to the vocational expert corresponding to the plaintiff's RFC and that, "*If* the VE [vocational expert] relies on census code or other occupational group data to provide numbers of specific jobs available at Step 5 of the disability eva[l]uation process, the ALJ [administrative law judge] will further question the VE . . . ." *Id*. (emphasis added). The administrative law judge was then to "issue a new decision based on the total record." *Id*. at 541-42. The administrative law judge did all of those things. He was not directed to reach Step

12

5 or otherwise precluded from revisiting the Step 4 determination and finding. *See id*. at 541-42.[8]

The recent case of *Harriman v. Colvin*, No. 1:12-cv-208-NT, 2013 WL 1760520 (D. Me. Mar. 31, 2013) (rec. dec., *aff'd* Apr. 24, 2013), cited by the plaintiff's counsel at oral argument as supporting a remand on this basis in this case, is materially distinguishable. First, as the plaintiff's counsel acknowledged in citing it, *Harriman* is not a "mandate rule" case. In *Harriman*, the court found reversible error when, without notice and without articulating good cause therefor, an administrative law judge reconsidered and reversed a favorable SSI decision in circumstances in which a claimant had appealed an unfavorable SSD decision. *See Harriman*, 2013 WL 1760520, at *2-*3. There is no suggestion in *Harriman* that the decision was the subject of a prior court order. *See generally id*. Second, in this case, while the administrative law judge's Step 4 determination was favorable to the plaintiff, his decision was not. Third and finally, as discussed above, in reversing and remanding this case, the court did not explicitly or implicitly preclude reconsideration on remand of the Step 4 finding.

### 3. Handling of Leach/Lantos RFC Opinion

The plaintiff argues that the administrative law judge erred in rejecting the January 2010 mental RFC opinion of Dr. Lantos and his physician's assistant, Leach. *See* Statement of Errors at 16-17. Lantos and Leach reported that the plaintiff's mental impairments would result in marked limitation in 17 of 20 listed work capacities, including the abilities to maintain attention and concentration sufficient to perform work tasks throughout an eight-hour workday, perform

---

[8] The Decision Review Board specifically directed, on remand from the court, that the administrative law judge "ask the vocational expert to identify examples of appropriate jobs and to state the incidence of such jobs in the national economy[,]" Record at 544 (citation omitted), a Step 5 inquiry. The administrative law judge complied with that additional directive, *see id*. at 900-02, although he did not ultimately make a Step 5 determination, ending his analysis at Step 4.

activities within a schedule and within customary tolerances, and perform at a consistent pace without an unreasonable number and length of rest periods. *See* Record at 459-60.

An administrative law judge may reject an opinion of a treating source provided that he or she supplies "good reasons" for doing so. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) ("[The commissioner] will always give good reasons in [her] notice of determination or decision for the weight [she] give[s] [a claimant's] treating source's opinion.").

The administrative law judge explained that he gave the Leach/Lantos opinion "little weight" because (i) "Ms. Leach only saw the [plaintiff] for [the] first time on December 14, 2009, and appears to have based her opinion in large part on [the plaintiff's] subjective allegations[,]" (ii) the form that Leach was asked to complete provided only the option of indicating a "marked" impairment, and Leach had checked all but two,[9] and (iii) the degree of limitation was not supported by Leach's own objective findings and was not consistent with the evidence as a whole. Record at 532-33.

These are good reasons for rejecting the Leach/Lantos opinion, and they appear to be supported by the record evidence. For instance, Leach had indeed seen the plaintiff only once, on December 14, 2009, and had recorded what appears to be a relatively benign mental status examination. *See* Record at 463 (describing plaintiff as "alert and oriented" and "cooperative[,]" with normal speech, a euthymic affect despite her report that her mood was "still depressed," a logical and goal-oriented thought process, and an ability "to recall three out of three items immediately," "after five minutes . . . to compare and contrast a bird and an airplane[,]" "to recall the last three presidents of The United States[,]" "to spell the word 'world' forwards and

---

[9] Leach left three, rather than two, categories unchecked. *See* Record at 459-60. Nothing turns on the error. It is still fair to say that Leach indicated that the plaintiff was markedly impaired in nearly all mental work capacities.

14

backwards without any difficulty[,]" and "to do serial 7s without any difficulty.") (internal quotation marks omitted).

### 4. Credibility Determination

Finally, the plaintiff contends that the administrative law judge committed reversible error in analyzing her credibility, specifically, by finding that her activities of daily living contradicted her claims without detailing how those sporadic activities translated into an ability to perform work-related functions 40 hours a week and without taking into account that certain activities, such as walking and yoga, were prescribed for treatment of her fibromyalgia. *See* Statement of Errors at 17-19.

She cites *Ormon v. Astrue*, 497 Fed. Appx. 81 (1st Cir. 2012), *see id.* at 18, in which the First Circuit rejected the commissioner's argument that, although the administrative law judge did not mention the extent of the claimant's activities of daily living in discrediting his complaints of disabling pain, those activities supported the administrative law judge's decision in this regard, *see Ormon*, 497 Fed. Appx. at 87. The First Circuit explained:

> As the Commissioner notes, claimant reported, in June 2007, that he goes grocery shopping, does laundry and the dishes, and takes out light trash. However, claimant clarified that due to his back pain, he needs help bending when doing the laundry and the dishes, and he cannot handle heavy trash or yard work. In any event, and as the court observed in *Carradine* [*v. Barnhart*, 360 F.3d 751 (7th Cir. 2004)], there is a difference between a person's being able to engage in sporadic physical activities and her being able to work eight hours a day five consecutive days of the week.

*Id.* (citation, footnote, and internal quotation marks omitted).

While a claimant's activities of daily living, standing alone, do not constitute substantial evidence of a capacity to undertake full-time remunerative employment, *see, e.g., Eaton v. Astrue,* Civil No. 07–188–B–W, 2008 WL 4849327, at *5 (D. Me. Nov. 6, 2008) (rec. dec., *aff'd* December 1, 2008), an administrative law judge properly may take such activities into

15

consideration in assessing the credibility of a claimant's allegations, *see, e.g., Nolan v. Astrue,* Civil No. 09–323–P–H, 2010 WL 2605699, at *7 n. 4 (D. Me. June 24, 2010) (rec. dec., *aff'd* July 28, 2010).

In this case, unlike in *Ormon*, the administrative law judge did discuss the plaintiff's "wide range of activities of daily living" in making his credibility determination. *See* Record at 532. The plaintiff does not suggest that, as in *Ormon*, he omitted material limitations on her ability to complete those tasks. *See* Statement of Errors at 17-19. He supportably found that her activities, taken as whole, including walking three to five times per week, washing dishes, straightening up the house, dusting, vacuuming, mopping, doing laundry, making beds, and sweeping, called into question her claimed limitations, including an ability to stand for only 20 minutes, walk for 15 minutes, and sit for 30 minutes. *See* Record at 531-32. That the plaintiff had been prescribed exercise, including yoga and walking, as therapy for her fibromyalgia did not undercut the fact that she had demonstrated the physical capacity to undertake those activities.

## II. Conclusion

For the foregoing reasons, I recommend that the decision of the commissioner be **VACATED** and the case **REMANDED** for further proceedings consistent herewith.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof.   A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 29th day of June, 2013.

/s/  John H. Rich III
John H. Rich III
United States Magistrate Judge